IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY S. WILLIAMS,               :       Civil No. 3:21-cv-853
                                   :
            Plaintiff              :       (Judge Mariani)
                                   :
      v.                           :
                                   :
CORRECTIONS OFFICER II JONES,      :
CORRECTIONS OFFICER I JOHN DOE,  :
                                   :
            Defendants             :

**MEMORANDUM**

Plaintiff Anthony Williams ("Williams"), an inmate confined at the State Correctional

Institution, Coal Township, Pennsylvania, ("SCI-Coal Township"), initiated this civil rights

action pursuant to 42 U.S.C. § 1983.  (Doc. 1).  Named as Defendants are Correctional

Officer Jones and a John Doe Correctional Officer.  Presently ripe for disposition is

Defendant Jones' motion (Doc. 24) for summary judgment pursuant to Federal Rule of Civil

Procedure 56.  For the reasons set forth below, the Court will grant the motion. The Court

will also dismiss the action against the John Doe Defendant pursuant to Federal Rule of

Civil Procedure 4(m).

I.    <u>**Statement of Undisputed Facts**</u>[1]

On August 5, 2019, Williams was housed in general population at SCI-Coal

Township in D Unit, Pod B.  (Doc. 25 ¶¶ 1-2; Doc. 32 ¶¶ 1-2).  Williams lived in an eight-

man dorm, which consisted of a single, large room with seven other cellmates.  (*Id.* ¶ 3).

On August 5, 2019, Williams' shared dorm was searched.  (*Id.* ¶ 4).  During the cell search,

Williams and his cellmates were required to be restrained and stand outside of the cell.  (*Id.*

¶ 5).  Williams alleges that Defendant confiscated some of his legal documents.  (*Id.* ¶ 6).

Williams believes that these legal documents included a drafted complaint, print copies of

case docket entries he was studying, and a drafted affidavit for a witness in his criminal

appeal.  (Doc. 25 ¶ 7; Doc. 32 ¶¶ 7, 18).  After August 5, 2019, Williams was able to go to

the law library several times, was able to receive legal mail, and was able to go to

commissary to obtain writing materials.  (Doc. 25 ¶¶ 8-10; Doc. 32 ¶¶ 8-10).

Williams remembers the claims, events, and individuals relating to the drafted

complaint that the Defendant allegedly confiscated on August 5, 2019.  (*Id.* ¶ 11).  Williams

contends that he does not remember the exact times of the events.  (Doc. 32 ¶ 11).

Williams claims that the alleged act of confiscating his legal documents caused him to forgo

---

[1]    Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  *Id.*  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (Docs. 25, 32).

litigation of the claims described in the drafted complaint.  (Doc. 25 ¶ 12).  Williams wrote the drafted complaint months before Defendant allegedly confiscated it on August 5, 2019. (Doc. 25 ¶ 13; Doc. 32 ¶ 12).  Williams failed to re-write the drafted complaint because he wanted to exhaust the inmate grievance process and thought he was required to purchase a standard complaint form from the Clerk of Courts.  (Doc. 25 ¶ 14; Doc. 32 ¶ 13).

Williams believes that Defendant confiscated his legal documents in retaliation for filing an inmate grievance and a previous lawsuit, *Williams v. Pa. Dep't of Corrs., et al.*, No. 3:19-cv-1261 (M.D. Pa. July 23, 2019).  (Doc. 25 ¶ 15; Doc. 32 ¶ 14).  Defendant Jones contends that he was not a party to the previously filed lawsuit and Williams did not inform Defendant Jones of this previous litigation.  (Doc. 25 ¶ 16).  Williams asserts that Defendant Jones was a member of the D Unit management team during the time that he filed the previous lawsuit.  (Doc. 32 ¶ 15).  Williams further asserts that Defendant Jones stated that he was not going to return Williams' legal documents due to the previous lawsuit he filed against the other prison guards.  (*Id.* ¶ 16).  On August 5, 2019, the date of the cell search, Defendant Jones asserts that he had no personal knowledge of Williams' previously filed inmate grievance and civil litigation.  (Doc. 25 ¶ 17).  Department records were taken contemporaneously with the search on August 5, 2019.  (Doc. 25 ¶ 18; Doc. 32 ¶ 17). Defendant Jones maintains that no items were taken from Williams' shared dorm during the August 5, 2019 search.  (Doc. 25 ¶ 19).

The Department of Corrections conducted an investigation and determined that: (1) "[s]taff that searched the dorm do not recall confiscating any type or form of 'Legal' work" from Williams, (2) "[p]er DOC policy, any item taken from an inmate a DC-154a confiscated items receipt is to be issued[,]" (3) "[Williams] received no such paperwork[,]" (4) "(a)fter an extensive search of the property that was confiscated during the search, no items of [Williams'] was confiscated or for that matter found[,]" and (5) "no official documentation was issued and [] it can't be proven that [Williams'] 'legal' material was taken." (Doc. 25 ¶ 20). Williams states that he was not issued a confiscated items receipt for the legal documents that were allegedly confiscated on August 5, 2019. (Doc. 32 ¶ 19).

## II.  **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists.  *Anderson*, 477 U.S. at 248.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1)(A)-(B).  In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record."  FED. R. CIV. P. 56(c)(3).  "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).  If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe

it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.   Discussion

Defendant moves for summary judgment on the following grounds: (1) Williams failed to establish a First Amendment retaliation claim; (2) Williams failed to establish a First Amendment access to courts claim; and (3) Defendant Jones is entitled to qualified immunity.  (*See* Doc. 28).  In response, Williams clarifies that he is not pursing an access to the courts claim, and such a claim "is outside the facts of this suit."  (Doc. 31, p. 1 n. 2). Accordingly, the Court will only address the qualified immunity argument and the First Amendment retaliation claim.

### A.   Qualified Immunity

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  *See* 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the

violation of a right secured by the Constitution and laws of the United States, and must

show that the alleged deprivation was committed by a person acting under color of state

law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The doctrine of qualified immunity protects a state actor who has committed a

constitutional violation if the plaintiff's rights were not "clearly established" when the

individual acted. *Pearson v. Callahan*, 555 U.S. 223, 244-45 (2009). "Qualified immunity

balances two important interests—the need to hold public officials accountable when they

exercise power irresponsibly and the need to shield officials from harassment, distraction,

and liability when they perform their duties reasonably." *Id.* at 231. "Thus, so long as an

official reasonably believes that his conduct complies with the law, qualified immunity will

shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing

*Pearson*, 555 U.S. at 244). The burden to establish qualified immunity rests with the

defendant claiming its protection. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir.

2001).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a

constitutional or federal right has been violated; and (2) whether that right was "clearly

established" at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001),

*overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise

discretion in deciding which of the two *Saucier* prongs should be addressed first). In

addressing Williams' First Amendment claim, the Court only reaches the first prong of the qualified immunity analysis.

### B.    First Amendment Retaliation Claim

Williams alleges that Defendant Jones retaliated against him for filing a grievance and lawsuit by searching his cell and confiscating his legal documents.  An inmate stating a retaliation claim pursuant to the First Amendment bears the burden of satisfying three elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  *Id.* at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  *See Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 199 n.10 (3d Cir. 1996).  Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation.  *Krouse v. Am. Sterilizer*

*Co.*, 126 F.3d 494, 503 (3d Cir. 1997).  If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  *Rauser*, 241 F.3d at 334.  If the prison officials can make this showing, it defeats the retaliation claim.  *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

### 1.   *Protected Activity and Adverse Action*

It is well-settled that inmates engage in protected activity when they file grievances and lawsuits.  *See Anderson v. Davila*, 125 F.3d 148, 161-62 (3d Cir. 1997); *see also Watson*, 834 F.3d at 422-23; *Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011).  Thus, the Court must consider whether the alleged adverse actions set forth above are actionable under § 1983.  To be actionable under § 1983, the adverse action "need not be great" but "must be more than *de minimis*."  *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotation marks omitted).  Moreover, "[t]he cumulative impact of retaliatory acts may become actionable even though the actions would be de minimis if considered in isolation."  *Brennan v. Norton*, 350 F.3d 399, 422 n.17 (3d Cir. 2003).

Defendant asserts that a cell search is not a sufficiently adverse action.  (Doc. 28, pp. 5-7).  For the reasons set forth below, the Court is unpersuaded by Defendant's argument.

9

While cell searches are a routine part of prison life, *Hudson v. Palmer*, 468 U.S. 517, 526-27, it does not mean that searches that constitute "calculated harassment unrelated to prison needs" are permissible. *Id.* at 530. The Third Circuit has held that a retaliatory search and seizure may be sufficient to satisfy the adverse action prong of a retaliation clam. *See Humphrey v. Sec'y Pa. Dep't of Corr.*, 712 F. App'x 122, 124-25 (3d Cir. 2017) (citing *Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir. 2002)).

Moreover, Williams is not basing his retaliation claim only upon the cell search. Rather, Williams avers that personal property was taken from his cell. This Court has noted that a cell search and resulting confiscation of property may constitute adverse action "if motivated solely by a retaliatory motive." *Hernández-Tirado v. Lowe*, No. 3:14-cv-1897, 2017 WL 3433690, at *10 (M.D. Pa. Aug. 10, 2017). The Court finds the reasoning set forth in *Humphrey* and *Hernández-Tirado* to be persuasive and, therefore, concludes that Williams has satisfied the second prong for purposes of his retaliation claim.

### 2.   *Causation*

With respect to the third prong of a retaliation claim, while causation may be established by direct or circumstantial evidence, "motivation is almost never subject to proof by direct evidence." *Watson*, 834 F.3d at 422. Thus, motivation is typically demonstrated by "evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Id.*

Defendant Jones argues that, assuming *arguendo* that the documents were confiscated, and the action constituted an adverse action, Williams cannot show that his prior grievance and lawsuit were a substantial motivating factor for the alleged actions by Defendant, and that a time period of a thirteen days is insignificant to establish causation. (Doc. 28, p. 7; Doc. 34, p. 5).

First, Defendant Jones asserts that there is no evidence that he was aware of Williams' prior grievance and lawsuit. (Doc. 28, p. 8). The Court agrees with Defendant's argument. At his deposition, Williams admitted that Defendant Jones was not a party to the prior litigation, he never told Defendant Jones about the prior lawsuit, and never talked to Defendant Jones about the lawsuit. (Doc. 25-1, pp. 9, 28). Additionally, there is no evidence that Williams had previously filed a grievance against Defendant Jones. (*See* Doc. 25-5). Nothing in the record before the Court would permit a finding that Defendant Jones was aware of any prior grievance, or the prior lawsuit filed by Williams. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196-97 (3d Cir. 2015) (noting that a plaintiff "cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted"); *Whitehead v. Rozum*, No. 09-220J, 2012 WL 4078422, at *6 (W.D. Pa. Aug. 14, 2012) (concluding that the inmate-plaintiff had failed to demonstrate that corrections officers were "aware of his filing of . . . grievances such as to establish any motivating factor"), *Report and Recommendation adopted*, 2012 WL 4086717 (W.D. Pa. Sept. 17, 2012).

Williams' speculation otherwise is insufficient to defeat summary judgment. *See Wharton v. Danberg*, 854 F.3d 234, 244 (3d Cir. 2017).

Williams has submitted affidavits from two fellow inmates wherein they declare that they overheard Defendant Jones tell Williams that he was not going to return his legal paperwork because Williams filed a lawsuit. (Doc. 33, pp. 41, 43). It is undisputed that Defendant Jones was not a party to the previous lawsuit, and courts have "consistently rejected retaliation claims 'against one defendant based on [protected activity] against another [individual]' for lack of retaliatory motive." *Murray v. Smithbower*, No 1:17-cv-127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021) (quoting *Victor v. Lawler*, 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 201), *aff'd*, 565 F. App'x 126 (3d Cir. 2014)); *see also Royster v. Beard,* 308 F. App'x 576, 597 (3d Cir. 2009) (affirming the district court's grant of summary judgment in favor of a defendant on the inmate-plaintiff's claim that he was retaliated against by an individual who was not the target of his protected activity). Williams, therefore, cannot maintain his retaliation claim.

Second, Defendant Jones argues that temporal proximity of more than a few days is insufficient to establish causation. (Doc. 28, p. 9). Williams asserts that Defendant Jones retaliated against him for the previous inmate grievance he filed on January 1, 2019, and the civil litigation complaint he filed on July 23, 2019. The alleged retaliatory cell search occurred on August 5, 2019—seven months after Williams filed the inmate grievance and thirteen days after Williams filed his prior lawsuit. For temporal proximity alone to establish

causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003) (quoting *Krouse*, 126 F.3d at 503). A temporal proximity of a few weeks or months is insufficient to establish causation. *See DeFranco v. Wolfe*, 387 F. App'x 147, 154-58 (3d Cir. 2010) (concluding that two months temporal proximity between the inmate-plaintiff's protected activity and the alleged retaliatory cell transfer was insufficient); *Killen v. N.W. Human Servs., Inc.*, No. 06-4100, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation). Thus, "[w]here the temporal proximity is not 'unusually suggestive,' [the Court must] ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'" *Leboon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)). Williams' speculation that Defendant Jones searched his cell and confiscated his property solely to retaliate against him for filing a grievance and lawsuit, and where Defendant Jones was not named in either filing, is simply insufficient to create a genuine issue of material fact to survive summary judgment. *See Alexander v. Forr*, 297 F. App'x 102, 105 (3d Cir. 2008) (concluding that the district court properly granted summary judgment to the defendants on the inmate-plaintiff's retaliation claim because the inmate's "allegations of causation typically amount[ed] to no more than unsupported assertions; indeed, he often appear[ed] to rely on his unwarranted belief that causation is self-evident").

13

Accordingly, the Court will grant summary judgment to Defendant Jones with respect

to Williams' retaliation claim.  Because Williams failed to establish a First Amendment

violation, Defendant Jones is entitled to qualified immunity.

## IV.    Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with

the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the
> court -- on motion or on its own after notice to the plaintiff -- must dismiss the
> action without prejudice against that defendant or order that service be made
> within a specified time.  But if the plaintiff shows good cause for the failure,
> the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).  The John Doe Defendant was named in the complaint that was filed

on May 11, 2021 and, to date, has not been identified or served in this case.  The Court

must engage in a two-step process in determining whether to dismiss the unidentified, non-

served Defendant or grant Williams additional time to effect service.  "First, the district court

should determine whether good cause exists for an extension of time.  If good cause is

present, the district court must extend time for service and the inquiry is ended.  If, however,

good cause does not exist, the court may in its discretion decide whether to dismiss the

case without prejudice or extend time for service."  *Petrucelli v. Bohringer & Ratzinger*, 46

F.3d 1298, 1305 (3d Cir. 1995).  Good cause requires good faith on the part of the party

seeking an enlargement and some reasonable basis for noncompliance with the time

specified in the rules.  *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d

Cir. 1995).  In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.*  Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service. *Id.*

In the present matter, Williams failed to establish good cause.  After the expiration of the ninety-day time period set forth in Rule 4(m), the Court notified Williams that the action against the John Doe Defendant was subject to dismissal and directed him to show cause why the action against this Defendant should not be dismissed pursuant to Rule 4(m). (Doc. 17).  Williams failed to respond to the Rule 4 show cause order, and his *pro se* status is not good cause to excuse his failure to timely serve this Defendant. *Veal v. United States*, 84 F. App'x 253, 256 (3d Cir. 2004).  Based upon the lack of any reasonable explanation for his failure to adhere to the requirements of Rule 4, the Court finds that Williams failed to establish good cause.

If a plaintiff cannot show good cause for his failure to serve the defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time. *Petrucelli*, 46 F.3d at 1305; *see also* FED. R. CIV. P. 4(m).  It is Williams' responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion.  (*See* Doc. 6 ¶ 7) (advising Williams that failure to properly name a defendant, or provide an accurate mailing

address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)).

In light of Williams' lack of good faith effort to identify and serve the John Doe Defendant despite this Court's warning of the possible consequences, including dismissal, the Court concludes that dismissal is appropriate under the present circumstances. Accordingly, the unidentified, non-served Defendant will be dismissed from this action.

## V.   **Conclusion**

The Court will grant Defendant Jones' motion (Doc. 24) and enter judgment in his favor.  The Court will also dismiss the action against the John Doe Defendant pursuant to Federal Rule of Civil Procedure 4(m).  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: June 27, 2022